If it pleases the Court, my name is Carl Jensen. I'm here on behalf of Eddy Bullcalf. There are three issues before this Court. It would appear that the one that seems to be the one that the Court is most interested in is regarding the testimony of S.F. and the attempt to impeach her testimony with Special Agent Quinlan by the defense. When she was cross-examined by the Defense Trial Council, the witness indicated that she did not remember ever being interviewed by Special Agent Quinlan. When the Defense Council then attempted to put Special Agent Quinlan on to testify regarding the interview he had with her, the trial court indicated he could not actually have that agent testify. The question is how harmful was the error? Mr. Bullcalf was facing and the sentence he had, and that's our position. I understand the government's position is that it is harmless and it doesn't at the constitutional level. It will be our position that my client's right to confront and cross-examine the witness is his constitutional right to a defense where all he does is basically impaired by this, and that this is a fundamental error, a fundamental right that was violated by him, and so it's the level of constitutional error. Are you saying it's structural error, free from the harmlessness analysis? I'm not saying it's structural. Well, Judge, I would kind of argue it's structural, but I think I take the position that the government would have to show it's harmless beyond a reasonable doubt. Okay, so let's leave to one side a little bit the precise standard for harmlessness. Do we have a proffer as to what he would have said? There wasn't one, Judge. So how am I supposed to know how harmless or harmful the error was? I understand that, Judge, and I can't – I mean, I could tell you what I think the judge is going to say, but that's not what's before the court, and it's not the record. Were you the trial attorney? I was not, Judge. So you don't even know just kind of because you happen to know, and it's not on the record, so... It's not on the record. I talked to trial counsel, but it's not on the record, Judge, and it would be unfair to put all what I think is going to say. And the objection was preserved. We're not here on plain error, but you might want to tell trial counsel that if an FBI guy was going to say something that was really helpful, he should have proffered. That's the judge as to how helpful it might have been. I agree, Judge. And other potential witnesses that could have been called. The guidance counselor who was there was not called as a witness, not that there was an obligation to do so, but you had other opportunities, you, I mean, trial counsel, to have people testify as to what transpired on that occasion, I suspect, correct? That is correct, Judge. So help us out with the information we do have as to why it's harmful. Well, Judge, it's my understanding that Special Agent Quinlan was going to basically indicate that a number of the statements by S.F., which wasn't the actual victim for the charges, but it was one of the outside people used to convey that this was consistent with his behaviors and intent and motive and things like that, that a lot of the statements she had made, she was not going to use. And I think that because of the age of the events, that would be very important, I think, for the trier of facts to realize that not everything that's being presented by my client was, in fact, accurate, that things have perhaps grown bigger than they really have at the, when it got to trial years later, that there is even potential that the stories have been, you know, in the past. I mean, arguably, a trial counsel has been cooked up by the victim and by her friends that were involved in this and relatives of my client, Mr. Bocaff. Now, if you were to take away the disputed testimony that would have been to some extent, I'm willing to assume, rebutted by the FBI agent, we are left with two corroborating witnesses in terms of prior pattern of behavior that look similar, plus the charges for the actual victim. If that's all you got, it seems to me, testimony by the victim corroborating evidence from two others who say they're pretty much a similar pattern, boy, that's a pretty strong case against your client. I would agree that it is a strong case against my client. I would say that one of the other, and in the brief I noted that one of the other alleged victims of him, her story changed as well. The story that was presented in court was considerably different than what was anticipated. The story was different than what was pro-offered to the court ahead of time in order to get her testimony in there. And it was not nearly as significant or as drastic as was the court led to believe. And that was LL, Judge, and so... LL is the one where he ends up touching her in the sort of... On the thigh. Well, and then just below the navel. Correct, and she was agitated by that, apparently. But what was presented at court prior to that was that he was actually touching her a lot lower than just below the navel, and that the touch was inappropriate, and that this was consistent with other things he had done, Judge. Yeah, yeah. Okay, well, I got that point. Do you want to argue the other? You've got a couple other points that... The other one, Judge, issues would be regarding the curative instruction that the other people that were corroborating shouldn't be used to actually find my client guilty. I think the case law is pretty clear on that. There is that Eighth Circuit case which indicated there should be more instruction than was provided, and I would say that's error. The government, again, argues that should be something done on a later hearing, a post-conviction hearing, not a direct appeal. But I think the error is clearly before the court, and the court could consider... Yeah, of course, ordinarily we do IAC later, but I'm not sure there's anything not now on the record that would be useful to deciding whether or not that's IAC. Correct. And so, and I think I've already touched on LL. I think it's clear that the testimony is considerably different than what was proffered, and she shouldn't have been allowed in front of the jury as well. It is our position that all these errors are such, and because of the magnitude of charges facing Mr. Volkaff, and basically the penalty that was imposed upon him, that these things should be really taken very carefully. I understand the weight of the evidence against him on these things, but considering all that and weighing it, I think it should weigh in Mr. Volkaff's favor, especially considering what happened at the trial level, Judge. Okay. Why don't we hear from the government, and then you've saved some time. Thank you, Judge. Thank you. May it please the Court. I'm Dana Jackson for the government. I was trial counsel on this. The Court asked... So do you know what the FBI guy was going to say? I do. Okay. So what was he going to say? I understand it's not on the record. I got all that. But what was he going to say? Your Honor, she was interviewed when she was 12 years old. Obviously, the counsel was in the room, as was FBI. And she was going to say that she was touched twice. She was going to say? I was asking what the FBI guy was going to say. He was going to probably testify to what she was going to say. So... So what she was going to say or what she had said in the interview with him? That's correct. So wait a minute. I'm still confused. You said he would have testified as to what she was going to say. There's no other... She already testified. She said, I don't remember it. So I don't get it. She testified she didn't remember that the FBI was in the room. Right. She certainly acknowledged that there was a counselor in the room and that she disclosed at that time. Right. Obviously, Quinlan, Special Agent Quinlan, was able to testify that he was there. And so in that way, there was an inconsistency shown right there. I have the 302, Your Honor. I'm happy to supplement it in the record. Do you want to know what the fruits of his interview were? No, I think I'm not going to go down that path. It's not in the record. We don't have it. Okay. Right. Your Honor, the Court had asked the government to address the Williamson case. And there are two points I'd like to make on Williamson. First of all, it is good law, as you indicated, and it was not... Well, there's law and there's good law. It's good law in the sense that it was binding. That's correct. But it was before 613B became a rule of evidence. So it was 1962, 613B came in and I think affirmed what Williamson stands for in terms of... But I would argue that it was technically followed here. The defense cross was rigorous, but it wasn't rigorous enough. He established that she denied that the FBI was in the room, but what he could have done is asked the next question, which was, okay, do you recall making statements to, you know, the counselor and folks in the room at that time? She could have denied that. She could have explained that. And that was the predicate question that laid the proper foundation for Quinlan to be able to come in and testify. Okay. I don't speak for my colleagues, but I'm reading the following out of Williamson. And there can be no question of the sufficiency of the foundation laid for the agent's the answer of a witness that he does not remember having made a prior inconsistent statement is as adequate a foundation as a flat denial. Now, I understand that you're saying, well, well, there was, I don't remember having said it. Here she says, I don't remember that he was there. But to me, personally, not speaking for my colleagues, that comes within Williamson. I do believe... But for me, you've got to deal with the harmlessness of the evidence. And let me get to harmless. But I'd like to make one more point on Williamson, which is, in that case, it did involve the questioning of a defendant. In this case, as was pointed out, this is not potentially a witness that was material to the named person in the indictment. I do think it's important to point out that the United States does have a strong harmless argument. And I do believe that it isn't the constitutional review that's necessary here. It's an evidentiary issue. You know, the defense counsel actually did a really good job of revealing inconsistencies throughout her testimony. Quite frankly, she was consistent about the fact that she'd been abused between the ages of 6 and 12 by her uncle, just like every other person who testified. But... Kagan. Which year are you talking about now? I'm talking about SF. Oh, SF. Okay. Yeah. And so, you know, there was certainly she was consistent about the fact. What she was inconsistent about was the number of times she'd been sexually abused by her uncle. And she was also inconsistent about the method by which she was sexually abused. She'd been interviewed three times by the FBI. When she was 12, once when they caught up with her again, six months before trial, and then there was another 302 issued the day before trial. So the defense counsel actually did a good job of showing throughout the time she had been interviewed that she was inconsistent. That suggests that certainly the jury was in a good position to view her credibility. And ultimately, you know, we know what happened here. Bullcalf was convicted of four counts, three counts of aggravated sex abuse and of sexual abuse in this instance. I can go explicitly through all the ways that she was inconsistent that was pointed out by the defense, but. It's an awful long sentence. What, 540 months? Was that the sentence? It was, Your Honor. This was one that there was a max of lifetime, potential lifetime, because it's aggravated sex abuse because it was a 6-year-old under the age of 12. Is the fact that we should consider in the harmless error analysis the extreme length of the sentence? Your Honor, I don't think so in this instance. I think that's a separate question. The length of the sentence is not part of the appeal here. That's correct, Your Honor. So I've not researched it. Is this a sentence within the guidelines? It is, Your Honor. It is, Your Honor. In addition to the fact that the defense counsel did point out a lot of inconsistencies of this client, of this person, I do want to say that there is the possibility without getting too far and talking about things that aren't in the record, that impeaching or getting the testimony of Quinlan might have been more damaging to his client, because as I started this section out with, you know, she showed consistency in the fact that she was sexually abused by her uncle, just like everybody else was when she was prepubescent. So in regard to harmless, I think we're okay. And here, Your Honors, a conviction must be upheld if it's more probable than not that the error did not materially affect the verdict. And I think that that's the proper standard, and I think that the United States' argument that this should be upheld is a fair one. I do want to address the LL thing briefly, unless Your Honors have more questions on this issue. I would disagree. I would disagree that her testimony was largely inconsistent with what, you know, what was proffered before. Well, is that relevant? It isn't, Your Honor. I just wanted to let you know that I thought that she was more consistent than she was giving credit here today. Okay. But what she testified, she testified to. That is correct. If there's no more questions, I'm happy to sit down. Okay. Thank you. Thank you. Any rebuttal? I think not. Thank both sides for your arguments. United States v. BOCAF now submitted for decision.
judges: Block, Trott, Fletcher